Good morning, Your Honor. May it please the Court, this case presents the issue of whether I'll get your name for the record. Oh, yes, I apologize. John Sluder for Natasha Johnson. This Court presents the issue, this case presents the issue of whether Section 1983 controls proxy violations of people's civil rights, proxy violations. In this case, the city of San Bernardino doing what they couldn't do themselves through General Motors Acceptance Corporation. This case really is Atticus versus Cress. In Atticus there was a joint action between a department store and a police officer. They agreed to deny service to a woman because she was a white woman with a blue shirt, this was joint action. I would use a football analogy in this case. This is like a quarterback throwing a pass at being caught by a receiver and the receiver going across the goal line. That is joint action to create that touchdown. In this case, the police department is the quarterback, the football is the car, Mrs. Johnson, excuse me, the receiver is GMAC, and they are withholding this pass and forfeit your loss. I understood Atticus to suggest that the state could not avoid liability under 1983 by working through a private entity. That's a very, very different proposition. You have sued the city of San Bernardino here, and if I've read Atticus correctly, then the city of San Bernardino can't come up, throw up its hands and say, oh no, this was, you were dealing with GMAC, you weren't dealing with us, therefore we have no responsibility to you. You've already settled with the city of San Bernardino. Yeah. So you've already sued them and evidently sued them successfully. Well, from the title of Atticus versus Kress, Kress was the department store. So Atticus was also suing the department store. And liability was found on the part of the department store. Under 1983. Under 1983. Well, plus, I mean, one of the confusions here is that many, I try to think about this case as it would be if Johnson had brought the lawsuit while the car was being withheld to get it back. At that point, she would have to sue GMAC because GMAC had it, right? And it would be a purely injunctive case, true, but while there might be some other difference in the nature of the cause of action, it wouldn't appear to be whether or not there was state action. So, I mean, in other words, in that kind of lawsuit, is there any doubt that GMAC would have to be a proper defendant in a 1983 case? Well, in that case, yes. When they're seeking injunctive relief under 1983, yes, GMAC would have to be. So doesn't really the whole problem here start to run into the question of what is the defense in a 1983 damages action where a private actor claims to be acting under some sort of compulsion, more than at the front end, at the back end is really more of the issue? So what I think, if I understand the Court correctly, the Court is going toward the good faith defense that has been offered. Yes, and I don't necessarily have to discuss it now, but it seems to me that the two pieces, it's not useful to talk about the two pieces completely separately. I agree that there tends to be some overlap, and some of the analysis seems to be the same. I would bring to the Court's attention, because Clement v. The City of Glendale, which was a March case decided by an opinion by Judge Kosinski that bears upon this case, that was March 2008, and that said two things. It said that that was a case where a tow truck company took vehicles. The Court said that the towing company didn't engage in State action because they were acting in tandem with the police department. They also said that there was a good faith defense, and that's the first Ninth Circuit case that says that good faith is a defense. It said there was a defense, but it didn't really establish the contours of that defense, which may the Court, this Court may or may not have to get into. Does the Court want to cite to the Clement v. Glendale case? It's 518 F3rd 1090. It said there was the state of the record here with regard to, are you relying primarily on joint action theory and not on a compulsion theory? We're relying on both. We think both apply. But the compulsion theory is pretty weird, right? Because it would appear that the more compulsion it is, at least the less responsible the person is. Whether that's not State action is another problem, and then we're back to the defense. But at some point, and the Sutton case sort of demonstrates it, it can't be that somebody, a private person who's doing what he has to do, is liable. Whether it's a State actor is kind of a different issue. So the compulsion theory doesn't work very well to solve anything here, does it? Well, and again, I think that Kirtley v. Rainey talks about sort of general rules, this not being an exact science, and that every case is fact specific. I think that the joint action and the compulsion case kind of work in tandem. I agree that if this were a case where a police officer came to somebody and said, you let me into this room, this person, or I will arrest you, that person may not be deemed to not have a choice but to do what the police officer says. But the reason I ask that first, what exactly is the state of the record here about the compulsion? And when I read through it, it was much less clear than the briefs make it out to be that the GMAC was doing this because it was required to do it by San Bernardino. At some points, the San Bernardino person says I told them it was up to them what to do. Yeah, I think that's right. I don't think that there was a very strong compulsion because basically the GMAC said that they did what they did because they were directed to by the police department. But the police department wasn't bearing a very heavy sanction. They didn't have a big stick to use on GMAC. They weren't going to arrest them. They weren't going to shut down the business. They weren't going to do the kind of things that you would say that GMAC had no choice. What the leverage that the police department had was that they said that they would withhold the vehicle from Johnson, and they would withhold the vehicle from GMAC, which they could not do under the asset forfeiture laws. So, you know, if they had done that, GMAC... How is GMAC supposed to figure that out? Well, the police department says, look, if you don't do what we want, we're going to hold this vehicle. Now, GMAC may be able to go out and hire a lawyer. They may be able to go out and get counsel and come back and say to the police department, we don't think you can do that. Now, that may or may not be available. The police department may say, we don't care. We're going to box this whole thing up for so long that your asset here is not going to be valuable by the time you finally get it. So you're going to do what we want, or we're going to really cause a lot of trouble for you. Yeah. You know, I don't think that in 1983 private action, public action cases, all defendants should be regarded the same. I think there's a difference between the manager of an apartment building and somebody with a legal department on the side of a small city. The other thing I would say is that it's not quite accurate to say that the asset that the GMAC was losing was the car. It wasn't losing the car. It was simply losing the ability to use that car as a security interest, because what they really had in this arrangement with Mr. Johnson was the right to receive money from Mr. Johnson. And regardless of what happened to the car, they were going to get that money. All they lost was a security interest. So what they were being coerced, the coercion just was not a big stick. So, yeah. I was really asking a slightly different question, which is it wasn't really clear to me that that coercion was the main evidence that it was being exercised was what they ultimately signed. But before that, the asset person keeps saying, I told them that basically they could do what they want. It was their decision to repossess the vehicle or allow it to be returned to the registered owner. So where's the compulsion? The In my in my statement of facts, I think I cite places where Missy Nguyen said that the only reason they took it was because they were told to do so by the city. So there's at least some ambiguity in the record about this is all I'm saying. It's not so clear to me that a jury couldn't find otherwise. That's true. But it should be recalled that this is a summer judgment stage. I understand that. Which is all the more reason why I don't know how we could be deciding on a theory that there certainly was compulsion. There was a what? That there was compulsion. Are you are you disputing the uncontroverted facts found by the district court? Well, I mean, they're not uncontroverted. I think that the district court might have drawn some inferences in favor of the moving party instead of the opposing party. And I can state what facts are in the record. And I'm prepared to address particular facts. That's really what I was trying to find out. Are you accepting the fact that there that GMAC only did this because however you characterize the compulsion, that there was compulsion. And certainly that's how the district court ruled. And are we to go forward in that premise as well? I think I think there was true inaction. I also think there was a low level of compulsion. Certainly not the kind of compulsion that created the situation where GMAC literally had no choice, which seems. You're really saying that there was enough compulsion to make the State accurate but not enough to be a good-faith defense? That's correct, Your Honor. Counsel, I want to press the point I just asked you just a minute ago because I want to make sure. Your statement of issues doesn't say anything about the district court overstepping its bounds in finding facts that should have been resolved by a jury. So you seem to have accepted the uncontroverted facts in the district court's summary judgment order. You dispute the law, you completely dispute the law. Well, what I stated was that in ruling on the summary judgment motion that this court sits as a trier de novo and makes its own determination based upon the record as to what the facts are. This court is not bound by the district court's facts. This court sits de novo. Well, how could that possibly be? I thought that's what the law was. I thought that's what the law was. Well, that is what the law is, but you have to raise the issue. That's the problem. I mean, the law is that what's a controverted factor isn't just a matter of record and we review de novo, but you haven't really asked us to do that. That's what I was trying to get at. I see. I see. You've stated here that we get to review the summary judgment de novo. That's correct. Yes. But that's assuming that the facts are as they've been alleged, unless you're going to controvert them. And I don't see that you've taken and said paragraph 11 or paragraph 18 or 23 or whatever it is, the district court overstepped its bounds because we really dispute this. So as I see it, you conceded the facts as the district court declared them. You simply disagree with the legal conclusions that are drawn from those facts. I thought that I had done that by saying that the court could review the facts de novo and by setting forth the facts as I believe they were set forth in my moving papers that I had raised that issue. That's all I can say. So is there any place in your brief where you have put into controversy any of the facts found by the district court? That's what I said, Your Honor, but there was no place where I said or where I went to paragraph type. Okay. So you think you thought that you'd put the whole array into controversy, but you haven't selected any particular paragraph to dispute it? Correct. Okay. Let me ask you about the Minnell claim. What policy do you allege that GMAC had that was unconstitutional? Basically, what I'm relying upon is a statement of Vice President Occe and Missy Nguyen and Louis Castle saying that everything that was done was done according to policy. I don't articulate a particular policy. I don't, for example, take a policy manual and withdraw a particular policy and say this is it. I'm simply relying on the book that says whenever the police tell you to do something, you've got to do it or anything like that. I don't know that there's anything in the book, but I know that the Redmond case says that it's not necessary for a policy to be a written policy. In fact, according to the Redmond case, policies that are followed may contradict written policies. So, no, I don't have a particular written policy that says that you do anything the police say, but I do have Missy Nguyen, Louis Castle, and Vice President Occe saying everything was done according to policy. Okay. Did you want to save some time? Yes, Your Honor. Thank you. Thank you very much. Good morning, Your Honors. Jan Shilton for GMAC. Let me start off by saying that I don't believe any of the facts here are in dispute because they weren't raised or briefed. Excuse me. My voice seems to be not with me today. Left it in San Francisco. I don't believe there's any controversy about what the facts are before you, because there was no point raised in that regard in the briefs. It was not briefed. And to raise it now for the first time at oral argument comes much later. I was just curious as I read through the record because it didn't seem all that obvious to me. What right did GMAC withhold the car from this lady? I'm sorry. What gave GMAC the right to withhold the car from this lady? It had no right. It was forced to because that was the only way it was going to get its car back from a police officer. But why is their security interest more important than her right to her immediate possession of the car? It isn't. It isn't. But they don't even get to exercise their security unless she's in the fall. That much is true. OK. And so suppose the police had said to her, said to GMAC, we want you to break into her house and take the keys. Get the keys. Could they do that? No, because there it clearly is a violation of law for and GMAC would have no right to go into her house. It had a right to the car because, excuse me. May I just finish? Because the conditional sale contract requires her to keep the car free from forfeiture, free from seizure by the government. Which it was. No, it was seized. They told you they weren't going to forfeit it. If we did not get the car from them on the condition that they imposed, they, the police imposed, the police would keep the car. Well, you should have sued the police department. You should have said you're interfering with my security interest. But, you know, what you're saying, GMAC. They don't have the right to steal her car because they tell you, you know, they have a problem with her. If they're holding your collateral improperly, contrary to your rights and contrary to her rights, it seems to me the answer is you've got to go and sue the police department. With all due respect, Your Honor, I don't think that's true. When they offer to return the car to us, we can take what is, as the opposing counsel says, the easy way out. We can accept the car subject to the condition. We don't have to defend her right to her car. What gave you the right to accept their condition? The fact that we have a security interest in the car which is exercised by the fact that the police seized it. Their condition, they had no – their – the statute says that if they're not going to forfeit, they have to return it to her, not to you, right? That's what the statute says, yes. Okay. And they weren't about to do that. They weren't about to do that. So they were essentially using you to do what they couldn't do. No. Why? They were – if we did not accept the car from the police, the police would have withheld the car from Mrs. – Right. And you wouldn't have the car, which is – for GMAC, it's not the worst thing in the world. You wouldn't have the car, and you can go get it because they had no right to do that. And you have legal remedies. Well, that's true, but what plaintiff is asking us to do on pain of damages for not doing it is protect her legal rights from the police. Not – and all we're saying is, look, we get to protect our legal rights. She protects hers. We don't have to go out and fight her battle. It's her against the police, not us against the police. And why should we have to sue the police when they're willing to return us the car? But they're only willing to return you the car if you agree to a condition that they have no right to impose. Well, we don't know that. We know that now because we're lawyers. We're before you in the Ninth Circuit having come, you know, and battled this thing for years. But, you know, she is seeking damages from employees – the employees, mind you, not just GMAC, but the employees who have no idea whether the police have acted legally or illegally. Well, shouldn't they contact the legal department or GMAC's counsel? Well, and they did. And they followed the advice of the counsel they were given. And the counsel was pretty confused about where this authority – he had no – He was trying to find out about what it was and how they justified their action. And then you have this whole handbook, which – or policy statement, which seems to reflect that this sort of thing happens fairly frequently in that GMAC. No, I read the whole thing. I think you misread the record, Your Honor. I think if we're going to shift to Monell, and let's do that. No, I wasn't shifting to that. I was trying to reflect that there was a particular set of policies that GMAC gives to its employees about how to handle these things. And it appeared to essentially tell them, don't do this until you find out what the authority of the government is to do it. Am I wrong about that? They have procedures governing seizure of cars. Right. Because seizure of cars does happen, unfortunately, too frequently for GMAC's liking. But they didn't have a policy that really spoke to this particular factual situation. And the point I was going to make about Monell is that counsel for plaintiffs try – a plaintiff tries to put GMAC in a no-win situation. He says, you know, he asks a supervisor, well, did you think that anything your employees did was wrong? Okay. If she says yes, then presumably there's liability. If she says no, she's ratifying and saying that there's a policy that they follow. That cannot be the law. What Monell requires is a specific directive from the employer to the employee to the employee entity to its employees to follow a particular course of conduct, not simply a statement that the employees haven't done anything wrong. Ms. Chilton, if – leave San Bernardino out of this. If GMAC had read in the papers about Ms. Johnson's husband being arrested on drug charges and thought, whoa, you know, maybe there's a chance here that we're going to lose this asset, and they'd run over and have somebody break into the car and bring it back to the lot, does she have an action against them? Yes, absolutely, for breach of contract and wrongful – If the police – if the police say, we picked up the car, we're not going to bring it over to you, calling to GMAC, and GMAC says, sure, and the police say, we don't have any further interest in it, we have no further interest in this whatsoever, you figure this out, and GMAC holds the car, does she have an action in contract against them? She might. Well, if GMAC in that situation said, we won't because we don't want to return the car to her, and she's otherwise not in default under the contract. And she's got an action because you've detained the car, you've done something that doesn't seem to square up with the arrangement that you have in the leasing agreement. That's right. She might have a contractual remedy there. But here we're dealing with a quite different factual situation. Here, GMAC said first to the police, return the car to Mrs. Johnson. Please. And the police said, no, we're not going to do it. I mean, we tried to do what the contract required us to do, and the police said, no. OK. And, therefore, you just do whatever the police say? No. We do what we can to protect GMAC's rights and leave to Mrs. Johnson the protection of her rights. But you had no, but your rights didn't permit you to do that. I'm sorry? But your rights didn't permit you to keep the car if she's not in default and if it's not going to be forfeited. Your rights are no rights. Our right is to protect our right to payment on the contract, and that's what we were doing. Now, to the extent we were forced to go beyond the exact contractual right we had, we had a defense to a contract action based on impracticability or – I have two questions, a factual and then a third may be legal. One thing that has mystified me about this case, and maybe it's because I don't understand the transactions here, is you promised not to return the car to her, but you did return the car to her. Ah, there – you hit on something, and let me explain that. She redeemed the car. I know that. She paid off the debt. Okay, but still the direction was don't return it to her, and you did. Right. But the deal was don't return it to her because if you do and we seize it again, we will not treat you as an innocent third-party lender. We will forfeit your interest because now you know she is a bad actor. Okay, but what you're saying is you were acting entirely in self-interest, but what you actually signed didn't say that. It said don't return it to her. That is what the letter – So you obviously had somewhat more freedom to move than you were suggesting. You weren't bound by what you had promised because you didn't do what you had promised. We didn't follow the letter – the letter to the letter. Yes, but the action that was taken, first of all, benefited Mrs. Johnson, of course, but also benefited GMAC, and it was exactly because the police had told us that the reason they wanted And the hammer they held over us was that upon re-seizure of the car, if we returned it to her, we'd be out of our money, not she'd be out of her car. All right. Secondly, there is a document in the record at OL129, which seems to me to be very much what I described. It does contemplate these circumstances, and it says, Seizure or confiscation is generally not sufficient to forfeit the customer's interest unless additional steps are taken. GMAC may receive written notice that the customer's interest has or will be forfeited. If GMAC does not receive written notice, then before accepting the vehicle subject to the condition that GMAC not return to the customer, that's what you had here, attempt to confirm with the government agency that the agency has either already forfeited the customer's interest or expects to do so. Right? It also goes on to talk about the very condition that you had here, i.e., an indemnity provision. So it doesn't seem that this is all that peculiar, and this was not what was done. No. Indeed, it was done, Your Honor. The attorney did exactly what you just read. After you took back the car. After we took back the car. After, not before. Right. That much is true. But I don't believe the timing is significant. We were trying to follow as best we could the policy of making sure that the police were, you know, had justification for what they were doing. And because, and it was only because of the timing required by California's redemption statute under Reese Levering that Mrs. Johnson exercised her right to redeem before we could get to the point of finding out whether the police really had. What about my hypothetical in which suppose that Mrs. Johnson had sued before you took the car back, before she got the car back, and to get her car back, and she had sued you and San Bernardino. Wouldn't you have to be a proper defendant in a 1983 case of that kind? I don't believe we would be a proper defendant in the 1983. Well, have to get her back then. But we would have been a proper defendant in a contract action. You're saying she could have sued you in state court for a replevant or something like that? Sure. Absolutely. Why couldn't she have simply sued you? I mean, isn't the fact that she's suing for damage is really what makes it seem odd that you could be a state actor? What about all the truck towing cases, including the recent one? There are several of them. And why are you not exactly in that position? Because in the truck tow situations, the towers are receiving income as a result of participating in a government program of towing the cars. They're economically self-interested, so when you --. Well, they're getting some additional income. Here we were simply protecting our own assets from improper seizure by the government. There's a huge distinction, in my mind, anyway, between the two. If, for example, you know, why isn't it the same between the truck tow situation and when the police comes and puts a gun at your head and says, do something? You know, yes, it's in your self-interest to do it because you don't want to get shot. Okay. Well, we want to avoid loss of our assets. And that's why we do it. It's in our self-interest. It's in your self-interest not to get killed. But you would do it. That doesn't convert what is. But essentially, the economic transaction was the government gave you an economic incentive to do something that it could not do. And that was not – that compromised her rights with regard to the government. And in an injunctive action, it seems to me, you would be exactly in the position of the truck tow people. Well, I – There the incentive was we'll pay you for it. And here the incentive was we won't – we'll give you your car back faster rather than slower because, in fact, you had to get the car back. They had no reason to keep it. Or she had to keep the car back and keep your security interest in it. They had no basis for keeping it. Well, whether or not they had a basis for keeping it, they had the physical possession of the car and they forced to keep it from us. So we're not here talking about what legal rights they had. They were – by hypothesis, they were acting outside the law. Otherwise, we wouldn't be here. But they had the power to keep our asset. And with all due respect, I believe that a forfeiture of property you already own is substantially different from not earning income which you do not own. And that's the distinction between this case and the towing cases. There, the towers are voluntarily participating in a program of the government. Here, we were not voluntarily doing anything. Other than getting back our asset which was held from us. What about our case law with regard to the Carlin case? Isn't it pretty square on in terms of the state action issue here? With all due respect, no, Your Honor. I think what counsel has very cleverly done is put before you a logical fallacy. He takes the ground of distinction of Carlin in Sutton and turns it around as if it were the holding in Carlin. It isn't what the – let me make it abstract for a moment. If there are three conditions to the applicability of a legal principle stated in a case, let's say Carlin, A, B, and C. A later case comes along and says, oh, here we don't have C. So Carlin doesn't apply. Now, does that mean every case hereafter in which C occurs, Carlin does apply? No, of course not. Because B and A have to be there still. All right. Well, let's forget about Sutton. Let's just talk about Carlin, okay? Why doesn't Carlin as written apply to this? Well, first of all, for the very reason that you pointed out, it was an injunction case, not a damages case. All right, but why? Why does that make a difference for 1983 law? Because what Carlin did was it freed the private actor from state compulsion and imposed no liability whatsoever on the private actor. All right, but that really – I mean, this goes back to where I started from, I mean, which is it seems to me that what we really have here is a problem about the nature of a defense, not a – I mean, you can't have different state action rules running around depending on whether it's an injunctive or a damages action. What you can have is a different structure of the cause of action. And I'm a little – I'm sort of wondering why we've been spending all our time at the front end when it seems to me the back end is what really matters. I'm happy with either end of the horse, Your Honor. Give me one. Absolutely. I mean, I think here, if you don't want to treat it as a state action question, you can look at the other side of the law as a state action question. Well, it's not a question of don't want to. I just don't see any logically consistent way, given Carlin, given the tow truck cases, and so on, that we could do that. Well, I respectfully differ for the reasons I've said, but let's not continue to debate that question. Let's move to good faith. I mean, here we have an entity that was acting as best it could to protect its interests against an assertion of government power. And all this huge corporation needed to do was go to its lawyer and say, please go to the statute books before we go take this car back and tell us whether they have a right to do this, and the answer would have been no. And not only that, I think that that document I read you sort of says no right there. Well, Your Honor, I don't believe that that is correct, because what the — first of all, there was a doubt here as to, you know, okay, are we acting as a State actor? I mean, you have to get to — for us to be liable here, for us to be acting in bad faith, we have to realize that we're violating her rights guaranteed by the Federal Constitution, not her contractual rights. Right? I mean, if the result of contacting the attorney was, well, we can't do this because she has a right to the car, she hasn't defaulted on her contract, we can't withhold the car. And moreover, the City of San Bernardino had an obligation to give it to her, not to you. Statutory spelled out as clear as day. Yes. The State — exactly. The City of San Bernardino had that obligation, not us. You have no business taking it because they have no business giving it to you, especially under compulsion. Okay. I think we understand that. You don't agree with that. Thanks. Thank you very much, Your Honor. Mr. Schluter. Thank you, Your Honor. Counsel made a point that said that he feels that Ms. Johnson is putting GMAC in the position of saying that GMAC has to fight her battles. But that's not what's happening. They simply — what Mr. Johnson wants is for the GMAC to stay out of it so she can fight her own battles and forfeit her court if it comes to that. One thing that's very important here is this was not just a case where GMA accepted the vehicle. GMA accepted the vehicle and then signed a hold harmless agreement saying, okay, if there's a lawsuit, City of San Bernardino, we'll protect you. That should have sent all kinds of red flags waving because it's hard to believe that the GMAC had a good faith belief that they were relying on the proper actions of the City of San Bernardino. Have you had a contract action against — or a tort action against GMAC? We don't have one. No, I'm asking a question in principle, not in fact. In principle, I suppose. Why don't you have a contract action against them? Well, we also — You're holding her car under circumstances under which the contract didn't allow them to hold the car. That's true. Don't you have a tort action? Some kind of a, I don't know, detainer or something? Some kind of bailman question? I suppose we could have filed some pendant — I mean, frequently in 1983 actions, lawyers will file cases under the court's pendant jurisdiction. We just didn't do that. Even independent of the 1983, I mean, whether you brought it into federal court or state court is not of our concern. But you've got — it seems to me that you've got several state court remedies here as well. It seemed provident to file this as a 1983 action because we were sitting — suing the city of San Bernardino as well. So here's a real clean, a 1983 action, sue the city, sue GMAC. We have — which the law permits us to do in both cases. I suppose also that they may have tried to defend a contract action on some sort of duress theory. I suppose they might have, although I just think that duress is a very long row for them to hoe. I just feel that, you know, a security interest in one vehicle when they still have the entitlement to get the money from Mrs. Johnson, who presumably filled out a credit application showing she was creditworthy, it just — it's hard to see that GMAC really was coerced to the extent that they didn't have any choice but to do what the city of San Bernardino required them to do. I think Mr. Chilton's got a Carlin problem. Do you have a Sutton problem? No, I don't think Carlin and Sutton contradict each other. Sutton was a case where the court basically said just following statutory authority is not state action. That's what Sutton was. Sutton was a case, as I recall, where somebody got hired as a manager in a hospital. Then they were asked for their Social Security number, and they refused to give it on religious grounds. And the hospital said, well, you know, the law said that we had to acquire this information. And the Sutton case said, consistently with every other case, says that just following statutory authority isn't joint action. So Sutton is just a completely different circumstance. This case really is Carlin. Are there any other questions? Thank you. Good morning. Thank you, both gentlemen. The case has started to be submitted.
judges: Silverman, Berzon, Bybee